1   MILBERG WEISS BERSHAD
      HYNES & LERACH LLP
2   REED R. KATHREIN (139304)
    100 Pine Street, Suite 2600
3   San Francisco, CA  94111
    Telephone:  415/288-4545
4   415/288-4534 (fax)
              - and -
5   WILLIAM S. LERACH (68581)
    DARREN J. ROBBINS (168593)
6   600 West Broadway, Suite 1800
    San Diego, CA  92101
7   Telephone:  619/231-1058
    619/231-7423 (fax)
8
    FRUCHTER & TWERSKY
9   JACK FRUCHTER
    60 East 42nd Street, 47th Floor
10  New York, NY  10165
    Telephone:  212/687-6655
11  212/557-6151 (fax)

12  Attorneys for Plaintiff

13

14                      UNITED STATES DISTRICT COURT

15                     NORTHERN DISTRICT OF CALIFORNIA

16  LORRY WAGNER, On Behalf of Himself and   )   No.
    All Others Similarly Situated,           )
17                                           )   CLASS ACTION
                              Plaintiff,     )
18                                           )   COMPLAINT FOR VIOLATION OF THE
         vs.                                 )   FEDERAL SECURITIES LAWS
19                                           )
    LOUDCLOUD, INC., GOLDMAN SACHS &         )
20  CO., MORGAN STANLEY & CO. INC.,          )
    THOMAS WEISEL PARTNERS LLC, EPOCH )
21  SECURITIES, INC., ALLEN & COMPANY        )
    INC., CIBC WORLD MARKETS CORP.,          )
22  DAIN RAUSCHER INCORPORATED,              )
    RAYMOND JAMES & ASSOCIATES, INC.,        )
23  ROBERTSON STEPHENS, INC., WIT            )
    SOUNDVIEW CORP., MARC L.                 )
24  ANDREESSEN, BENJAMIN A. HOROWITZ,        )
    RODERICK M. SHERWOOD III, WILLIAM        )
25  V. CAMPBELL, MICHAEL S. OVITZ and        )
    ANDREW S. RACHLEFF,                      )
26                                           )
                              Defendants.    )
27  _____ )   DEMAND FOR JURY TRIAL

28

**SUMMARY OF ACTION**

1.    This is a securities class action on behalf of all persons who acquired the common stock of Loudcloud, Inc. ("Loudcloud" or the "Company") pursuant to a registration statement and prospectus (collectively, the "Prospectus") declared effective by the SEC in connection with the Company's March 8, 2001 initial public offering (the "Offering").  This action arises from Loudcloud's March 2001 initial public offering pursuant to which the Company's directors and underwriters together sold 25 million shares of Loudcloud common stock at $6 per share, raising $150 million from public investors.

2.    The Prospectus used by defendants to sell $150 million worth of Loudcloud stock was false and misleading because, among other things, it failed to disclose:

(a)    Loudcloud's plan to substantially reduce its work force and to restructure immediately following the Offering;

(b)    that the Offering was not raising funds sufficient to enable the Company to reach profitability and accomplish the planned expansion described in the Prospectus;

(c)    that a major contract to which one of the underwriters was a party was being terminated; and

(d)    that in order to enable the Offering to go forward, sales of shares were being made to insiders and the selling price of the Offering was artificially maintained by the undisclosed sale of part of the Offering to insiders.

3.    As the truth about Loudcloud and its operations reached the market, the price of Loudcloud shares fell to less than $2.00 per share, inflicting over $100 million in damages upon plaintiff and the Class.

**JURISDICTION**

4.    This action arises under §§11, 12(a)(2) and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§77k, 77l(a)(2) and 77o.

5.    This Court has jurisdiction over the subject matter of this action pursuant to §22 of the Securities Act, 15 U.S.C. §77v, and 28 U.S.C. §§1331 and 1337(a).

1       6.    Venue is proper in this District under §22 of the Securities Act and 28 U.S.C

2   §1391(b).  The wrongs alleged in this Complaint occurred, in substantial part, in this District,

3   including the offer and sale of securities and the preparation and dissemination to the investing

4   public of false and misleading information, including a registration statement pursuant to which

5   securities were offered.  In addition, at all relevant times, the Company maintained its headquarters

6   and principal place of business within this District.

7       7.    In connection with the acts, conduct, and other wrongs complained of herein,

8   defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

9   including, but not limited to, the United States mails, interstate telephone communications and the

10  facilities of the national securities markets.

11  **PARTIES**

12      8.    Plaintiff Lorry Wagner purchased shares of Loudcloud issued in connection with and

13  traceable to the Offering, as set forth in the attached certification, and was damaged thereby.

14      9.    Defendant Loudcloud is a Delaware corporation with its principal executive offices

15  located in Sunnyvale, California.  Loudcloud was the issuer of the shares sold in the Offering.

16      10.    Defendant Marc L. Andreessen ("Andreessen") was at all times relevant hereto

17  Chairman of the Board of Directors and a director of the Company.

18      11.    Defendant Benjamin A. Horowitz ("Horowitz") was at all times relevant hereto

19  President, Chief Executive Officer and a director of the Company.

20      12.    Defendant Roderick M. Sherwood III ("Sherwood") was at all times relevant hereto

21  Executive Vice President and Chief Financial Officer of the Company.

22      13.    Defendant William V. Campbell ("Campbell") was at all times relevant hereto a

23  director of the Company.

24      14.    Defendant Michael S. Ovitz ("Ovitz") was at all times relevant hereto a director of

25  the Company.

26      15.    Defendant Andrew S. Rachleff ("Rachleff") was at all times relevant hereto a director

27  of the Company.

28

16.     Each of the named defendants in ¶¶10-15 (the "Individual Defendants") participated in the Offering by, among other things, preparing, reviewing and/or signing the Registration Statement/Prospectus.

17.     Defendants Goldman Sachs & Co. and Morgan Stanley & Co. were the lead underwriters of the underwriting syndicate which, together with the Individual Defendants and their other underwriter partners, raised $150 million via the Offering.  Set forth below are the defendant underwriters (the "Underwriter Defendants") and the number of shares each sold in the Offering:

| Underwriters | Number of Shares |
|---|---|
| Goldman, Sachs & Co. | 9,200,000 |
| Morgan Stanley & Co. Incorporated | 9,200,000 |
| Thomas Weisel Partners LLC | 3,560,000 |
| Epoch Securities, Inc. | 1,780,000 |
| Allen & Company Incorporated | 210,000 |
| CIBC World Markets Corp. | 210,000 |
| Dain Rauscher Incorporated | 210,000 |
| Raymond James & Associates, Inc. | 210,000 |
| Robertson Stephens, Inc. | 210,000 |
| Wit SoundView Corporation | 210,000 |
| **TOTAL** | **25,000,000** |

18.     The Underwriter Defendants are investment banking houses which specialize, *inter alia*, in underwriting public offerings of securities.  These firms served underwriters of the Offering, for which they shared in very substantial fees of many millions of dollars.

19.     As underwriters of the Offering, these defendants sold and distributed to the public, including plaintiff and members of the Class, more than 25 million shares of Loudcloud common stock pursuant to the Prospectus.  As part of their duties as underwriters of the Offering, the Underwriter Defendants supposedly conducted, prior to the Offering, a "due diligence" investigation pursuant to which they had access to adverse facts regarding Loudcloud's business as set forth herein. The Underwriter Defendants received substantial fees, expenses and discounts in connection with the Offering.  The Underwriter Defendants also participated in "Roadshow" presentations in major U.S. cities in the two weeks prior to the Offering, during which the then-existing problems with Loudcloud's business were not disclosed and glowing projections for Loudcloud were made to stimulate investors' interest and demand for Loudcloud stock.

20.     The Underwriter Defendants agreed to participate in the Offering in order to obtain substantial fees, expenses and discounts in connection with the Offering.   The Underwriter Defendants had access to confidential corporate information concerning Loudcloud's operations and financial condition.   The Underwriter Defendants also had access to Loudcloud's future business plans and prospects.  The Underwriter Defendants assisted Loudcloud and the Individual Defendants in planning the Offering and conducting a due diligence investigation into the business operations and future business prospects.   In the course of such investigations, the Underwriter Defendants themselves and through their counsel met with representatives of Loudcloud and counsel, during January and February 2001.  During these meetings, including those known as "drafting sessions," representatives of the participants met to discuss the timing and terms of the Offering and the contents of the Prospectus.   These parties, in part through their agents, discussed and reached understandings as to:

> (a)     The terms of the Offering;

> (b)     The language to be used in the Prospectus;

> (c)     What disclosures about Loudcloud would be made in the Prospectus; and

> (d)     What responses would be made to the SEC in connection with its review of the Registration Statement containing the Prospectus.

21.     The Underwriting Defendants were aware of and received copies of all drafts of the Prospectus, including those by which the Offering was consummated.  The Underwriting Defendants caused the Prospectus to be delivered to potential and actual purchasers of Loudcloud common stock in connection with offers and sales thereto.   From facts learned during their "due diligence" investigation of Loudcloud in connection with the Offering, the Underwriter Defendants knew or should have known that the Prospectus was false and misleading when issued as alleged herein.

22.     Each of the underwriters received substantial compensation for their participation in the Loudcloud Offering, receiving in the aggregate over $10 million.   In connection with the Offering, the Underwriter Defendants issued, caused to be issued, and participated in the issuance of the materially false Prospectus, which misrepresented and failed to disclose, *inter alia*, the material facts concerning the business and operations of Loudcloud as set forth herein.

**CLASS ACTION ALLEGATIONS**

23. Plaintiff brings this action on his own behalf and as a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class of all persons who purchased the common stock of Loudcloud pursuant or traceable to the false and misleading Prospectus which was declared effective on or about March 8, 2001 (the "Class"), including those who acquired Loudcloud shares directly from the Underwriter Defendants. Excluded from the Class are defendants herein, members of the immediate families of each of the Individual Defendants, any subsidiary or affiliate of any defendant, and the directors, officers, and employees of any defendant or their subsidiaries or affiliates, or any entity in which any excluded person has a controlling interest, and the legal representatives, heirs, successors and assigns of any excluded person.

24. Members of the Class are so numerous that joinder of all members is impracticable. Specifically:

(a) There were 25 million shares of Loudcloud common stock issued pursuant to the Prospectus; and

(b) While the exact number of Class members is unknown to plaintiff at this time and can only be ascertained through appropriate discovery, plaintiff believes that there are thousands of Class members who acquired Loudcloud shares pursuant to the Prospectus.

25. Plaintiff's claims are typical of the claims of the other members of the Class. Plaintiff and the other members of the Class have sustained damages because of defendants' unlawful activities alleged herein. Plaintiff has retained counsel competent and experienced in class and securities litigation and intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by plaintiff. Plaintiff has no interests which are contrary to or in conflict with those of the Class plaintiff seeks to represent.

26. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Plaintiff knows of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

27.     Common questions of law and fact exist as to all members of the Class which predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)     whether §§11, 12(a)(2) and/or 15  of the Securities Act were violated by defendants' acts as alleged herein;

(b)     whether the Prospectus contained false and misleading information;

(c)     whether defendants participated directly or indirectly in the course of conduct complained of herein; and

(d)     whether the members of the Class have sustained damages as a result of defendants' conduct, and the proper measure of such damages.

**BACKGROUND**

28.     On February 9, 2000, in connection with Morgan Stanley's support of Loudcloud and its efforts to obtain tens of millions of dollars in profits in connection with the ultimate sale of Loudcloud equity to the public, defendant Morgan Stanley purchased 66,000 units of Senior Discount Notes (the "Notes") from Loudcloud for $45.1 million.  In connection with the issuance of the Notes, the Company also granted Morgan Stanley warrants to purchase an aggregate 1.2 million shares of common stock at an exercise price of just $0.02 per share.

29.     On or about September 26, 2000, Loudcloud filed with the SEC a Form S-1 Registration Statement, which was amended on October 31, 2000, in connection with the planned sale of 10 million shares of common stock at $10-$12 per share.

30.     On or about February 16, 2001, Loudcloud filed with the SEC another amendment to its Form S-1 which increased the number of shares to be offered to 20 million and lowered the sale range to $8-$10 per share.

**SUBSTANTIVE ALLEGATIONS**

31.     On or about March 8, 2001, Loudcloud filed with the SEC another amendment to its Form S-1 increasing the number of shares to be sold to 25 million and lowering the price to $6 per share.  The defendants sold to the public 25 million shares of Loudcloud common stock priced at $6

per share, pursuant to the Registration Statement/Prospectus (the "Prospectus").[1]  Page 3 of the Prospectus described Loudcloud's business as follows:

> We offer businesses a new class of Internet infrastructure services.  Using our Opsware technology, which automates formerly manual tasks associated with deployment and maintenance of Internet operations, we provide a suite of services that addresses the challenges of deploying, maintaining and growing Internet operations for critical business functions.  These manual tasks include configuring hardware with the appropriate operating system, testing the stability of the hardware within the overall operational environment, managing the performance of the hardware and software on an ongoing basis and expanding the capabilities of the infrastructure.  Our Opsware technology allows us to centrally and consistently deploy and maintain our customers' Internet operations across multiple locations, with less manual intervention than would traditionally be required.  We generate revenue from the sale of our services, which incorporate the technology infrastructure and the deployment and maintenance expertise required to support and expand the scope of a customer's Internet operations.

> (a)     Page 3 of the Prospectus also detailed Loudcloud's planned *expansion*, stating as follows:

> We plan to *expand* the geographic scope of the Loudcloud Infrastructure Network and to *extend* the capabilities to our Opsware technology.  We also intend to continue to invest in the development and integration of *additional* services and to *expand* the scope of services we provide.

> (b)     At pages 9-10, the Prospectus also discussed the growth and expansion of Loudcloud's operators, stating:

> (iii)     We have rapidly *expanded* our business since we were founded in September 1999.  We have *increased* our number of employees from 71 at January 31, 2000, to 147 at April 30, 2000, and to 586 at January 31, 2001.  This *growth* has placed, ***and will continue to place, a significant strain on our employees, management systems and other resources***.  We expect our business to continue to ***grow in terms of headcount***, geographic scope, number of customers and number of services we offer.  There will be additional demands on our customer service support, research and development, sales and marketing and administrative resources as we try to *increase* our service offerings, expand our geographic scope and expand our target markets.  The strains imposed by these demands are magnified by our limited operating history.  We may not be able to successfully manage our *growth*.  In order to manage our *growth* successfully, we must:

---

[1]     According to the Company's later SEC filings, the breakdown of the fees collected as a result of the Offering, were as follows:

|                                          | Per Share | Total         |
|------------------------------------------|-----------|---------------|
| Initial Public Offering Price            | $6.00     | $150,000,000  |
| Underwriting Discount                    | $0.42     | $ 10,500,000  |
| Proceeds - Before Expenses - to Loudcloud | $5.58     | $139,500,000  |

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS                                    - 7 -

- **•**  **improve** and **add** to our management, financial and information systems and controls and other elements of our business process infrastructure;

- **•**  maintain a high level of customer service and support; and

- **•**  **expand**, retain, train, manage and integrate **our employee base** effectively.

Any failure by us to effectively manage our **growth** could disrupt our operations or delay execution of our business plan and consequently harm our business.

(c)     Page 47 of the Prospectus again represented the Company's continued growth, stating:

We expect that our cost of revenue will increase significantly as we continue to deploy additional customers, **increase headcount** and lease additional third-party data center in multiple locations.

*     *     *

As of January 31, 2001, we had 586 full-time employees. **We expect to hire substantial numbers of new employees in the foreseeable future**. Our future success will depend upon our ability to attract, integrate, retain and motivate highly qualified technical and management personnel, for whom competition is intense.

## OMISSIONS AND MISSTATEMENTS

32.     Following the completion of the IPO which enabled defendants to raise $150 million, the truth concerning Loudcloud's operations began to reach the market, causing Loudcloud's stock to fall to its present level of approximately $2.00 per share. The true facts which were omitted from and/or misrepresented in the Prospectus were:

(a)     that at the time of the Offering, the Company was not intending to increase its workforce as Loudcloud was already planning to down-size its operations and substantially reduce its workforce;

(b)     that the underwriters were unable to sell Loudcloud's entire offering to the public, and were forced to rely upon purchases by corporate insiders to make up the short-fall of nearly $8 million;

(c)     that Loudcloud's own business plan, upon which the Offering was based, required tens of millions of dollars of additional financing beyond that to be obtained in the IPO,

1    meaning that it was a certainty, rather than only a possibility, that Loudcloud required additional

2    funding;

3           (d)     that Scudder Weisel Capital, which is an affiliate of one of the underwriters

4    and provided the Company with approximately 17% of its revenue, was listed in the Prospectus as

5    a customer despite the fact that it was cancelling its contract with Loudcloud;

6           (e)     that Loudcloud was contemplating a restructuring which included a cost-

7    cutting restructuring involving, among other things, a workforce reduction of over 190 employees;

8    and

9           (f)     that as contemplated by defendants, the Loudcloud Offering would ***not*** raise

10   enough money to allow Loudcloud to reach cashflow breakeven.

11                                **COUNT I**

12                   **For Violation of Section 11 of the Securities Act**
                                   **Against All Defendants**
13
        33.     Plaintiffs incorporate by reference ¶¶1-32 above.  This Count is asserted by plaintiffs
14
     against all defendants and on behalf of persons who acquired shares of Loudcloud pursuant or
15
     traceable to the Prospectus.
16
        34.     Loudcloud is the issuer of stock issued via the Prospectus.  As such, Loudcloud is
17
     ***strictly liable*** for each false and misleading statement in the Prospectus.
18
        35.     The Individual Defendants are Andreessen, Horowitz, Sherwood, Campbell, Ovitz
19
     and Rachleff.  Each of the Individual Defendants participated in the Offering and was a signatory
20
     of the Prospectus.  Similarly, the Underwriter Defendants each participated in the preparation and
21
     consummation of the Offering.  The Underwriter Defendants issued, caused to be issued, and
22
     participated in the issuance of the materially false and misleading Prospectus, which misrepresented
23
     or failed to disclose, *inter alia*, the material facts concerning the business of Loudcloud as set forth
24
     herein.  Each of these defendants had a duty to make a reasonable investigation of the statements
25
     contained in the Prospectus to ensure that said statements were true and that there was no omission
26
     to state any material fact required to be stated in order to make the statements contained therein not
27
     misleading.  In the exercise of reasonable care, defendants should have known of the material
28

misstatements and omissions contained in the Prospectus as set forth herein. None of the defendants made a reasonable investigation or possessed reasonable grounds for the belief that statements contained in the Prospectus were true or that there was not any omission of material facts necessary to make the statements made therein not misleading. As such, each of these defendants are liable to plaintiff and the Class.

36.      Each of the defendants named in Count I issued, caused to be issued and participated in the issuance of materially false and misleading written statements to the investing public which were contained in the Prospectus which misrepresented or failed to disclose, *inter alia*, the facts set forth above. By reasons of the conduct herein alleged, each defendant violated, and/or controlled a person who violated, §11 of the Securities Act. As a direct and proximate result of defendants' wrongful conduct, the price for Loudcloud stock was artificially inflated and plaintiff and the Class suffered substantial damages in connection with the acquisition of Loudcloud stock.

37.      Plaintiff and other members of the Class acquired their Loudcloud stock without knowledge of the untruths or omissions alleged herein. Plaintiff and the other members of the Class were thus damaged by defendants' misconduct and by the material misstatements and omissions of the aforementioned Prospectus.

38.      This action was brought within one year after the discovery of the untrue statements and omissions and within three years after Loudcloud stock was offered to the public.

## COUNT II

**For Violation of Section 12(a)(2) of the Securities Act**
**Against Loudcloud, Andreessen and the Underwriter Defendants**

39.      Plaintiffs incorporate by reference ¶¶1-32 as if set forth herein.

40.      This Count is asserted by each of the members of the Class who bought their shares from any of the underwriters for violation of §12(a)(2) of the Securities Act against the Underwriter Defendants, Loudcloud and defendant Andreessen.

41.      By means of the Prospectus and Roadshow presentations, defendants were able to, and did, sell or cause plaintiff and members of the Class to purchase new Loudcloud shares.

42.     Each defendant named in this Count solicited and/or was a substantial factor in the purchase or acquisition by plaintiff and the Class of Loudcloud stock.  Defendants were motivated, at least in part, by a desire to serve their own financial interests.  Said defendants did the following acts in furtherance of the sale and/or issuance of Loudcloud stock:

(a)     They actively and jointly drafted, revised, approved and mailed to the members of the Class the Prospectus by which Loudcloud shares were issued.  The Prospectus was a "selling document," calculated by these defendants to create interest in Loudcloud stock and was filed with the SEC and widely distributed by defendants for that purpose;

(b)     These defendants finalized the Prospectus and caused it to become effective. But for these defendants having drafted, signed and/or filed the Prospectus with the SEC, the Offering could not have been completed;

(c)     These defendants conceived and planned the Offering and together jointly orchestrated all activities necessary to effect the sale of Loudcloud securities to the investing public, including plaintiff and the Class, by issuing the securities, promoting the securities, supervising their distribution to the investing public, and jointly drafting the misleading Prospectus; and

(d)     As a key part of the sales process, the defendants named in this Count organized and participated in a nationwide "Roadshow" to stimulate interest in the Offering.  During February and March 2001, defendants conducted scripted Roadshow presentations for Loudcloud shareholders, which presentations were designed to foment interest in the Offering in light of the difficult market conditions. The Roadshow presentations took place across the country, including in San Francisco, Los Angeles and New York City.  At each presentation, defendants assured shareholders, among other things, that at the time of the Roadshow, Loudcloud was planning and preparing to expand its business, operations and employee headcount, that Loudcloud's business was stable and improving, and that demand remained strong for Loudcloud's products and services.  As part of the presentations, defendant Andreessen conducted overhead presentations detailing the Offering and the performance of Loudcloud.

43.     But for the solicitation by these defendants as set forth above, the Offering could not and would not have been accomplished.  In the exercise of reasonable care, the defendants should

1   have known of the misstatements and omissions contained in the Roadshow presentations and

2   Prospectus as set forth above.

3          44.    None of the false and misleading statements and omissions described herein were

4   known to the members of the Class at the time they acquired Loudcloud stock.

5          45.    By reason of the conduct alleged herein, these defendants violated §12(a)(2) of the

6   Securities Act.  As a direct and proximate result of these violations of §12(a)(2), plaintiff and the

7   Class sustained substantial damage in connection with their purchase and/or acquisition of

8   Loudcloud stock.

9          46.    Members of the Class purchased or otherwise acquired Loudcloud shares pursuant

10  to the defective Prospectus.  Plaintiff did not know, or in the execution of reasonable diligence could

11  not have known, of the untruths and omissions contained in the Prospectus or made in connection

12  with the Roadshow presentations.

13         47.    Plaintiff hereby offers to tender to defendants those securities which members of the

14  Class continue to own, on behalf of all members of the Class who continue to own such securities,

15  in return for the consideration paid for those securities together with interest thereon.

16         48.    By reason of the conduct alleged herein, these defendants violated, and/or controlled

17  a person who violated, §12(a)(2) of the Securities Act.  As a direct and proximate result of these

18  violations of §12(a)(2), plaintiff and the other members of the Class sustained substantial damage

19  in connection with the purchase of Loudcloud stock.  On behalf of all members of the Class who still

20  hold their Loudcloud shares, plaintiff seeks rescissory relief.  Accordingly, plaintiff, on behalf of all

21  members of the Class who continue to own such securities, seeks to exercise his right to rescind and

22  recover the consideration paid for Loudcloud shares and hereby elects to rescind and tender all shares

23  held by members of the Class to the defendants sued herein.

24         49.    Less than three years has elapsed from the time that the securities upon which this

25  Count is brought were sold to the public to the time of the filing of this action.  Less than one year

26  has elapsed from the time when plaintiff discovered or reasonably could have discovered the facts

27  upon which this Count is based to the time of the filing of this action.

28

## COUNT III

### For Violation of Section 15 of the Securities Act Against
### Loudcloud, Andreessen, Horowitz, Sherwood, Campbell, Ovitz and Rachleff

50.     Plaintiffs incorporate by reference ¶¶1-32 as if set forth herein. This Count is asserted by plaintiff against Andreessen, Horowitz, Sherwood, Campbell, Ovitz and Rachleff.

51.     These defendants acted as controlling persons of Loudcloud within the meaning of §15 of the Securities Act. Loudcloud controlled defendants Andreessen, Horowitz, Sherwood, Campbell, Ovitz and Rachleff. By reason of their stock ownership, senior management positions and/or directorships at Loudcloud, as alleged above, these defendants, individually and acting pursuant to a common plan, had the power to influence and exercised the same to cause Loudcloud to engage in the unlawful acts and conduct complained of herein.

52.     By reason of such conduct, the defendants named in this Count are liable pursuant to §15 of the Securities Act. As a direct and proximate result of their wrongful conduct, plaintiff and the Class suffered damages in connection with their purchase of Loudcloud stock.

### PRAYER FOR RELIEF

WHEREFORE, plaintiff, on behalf of himself and on behalf of the Class, prays for judgment as follows:

A.     Declaring this action to be a class action pursuant to Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

B.     Against defendants, jointly and severally, for damages suffered as a result of defendants' violation of the securities laws;

C.     Awarding plaintiff and the members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' and experts' witness fees and other costs;

D.     Awarding recission or recissory damages to members of the Class who no longer hold their Loudcloud stock; and

E.     Awarding such other and further relief as this Court may deem just and proper.

1

**JURY DEMAND**

2
     Plaintiff demands a trial by jury.

3
DATED: October 19, 2001

MILBERG WEISS BERSHAD
4
  HYNES & LERACH LLP
REED R. KATHREIN

5

6
_____

7
REED R. KATHREIN

8
100 Pine Street, Suite 2600
San Francisco, CA  94111
9
Telephone:  415/288-4545
415/288-4534 (fax)

10
MILBERG WEISS BERSHAD
11
  HYNES & LERACH LLP
WILLIAM S. LERACH
DARREN J. ROBBINS
12
600 West Broadway, Suite 1800
San Diego, CA  92101
13
Telephone:  619/231-1058
619/231-7423 (fax)

14

15
FRUCHTER & TWERSKY
JACK FRUCHTER
16
60 East 42nd Street, 47th Floor
New York, NY  10165
17
Telephone:  212/687-6655
212/557-6151 (fax)

18
Attorneys for Plaintiff

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS      - 14 -

1

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2

3

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the

named parties, there is no such interest to report.

4

5

_____

ATTORNEY OF RECORD FOR
PLAINTIFF LORRY WAGNER

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28